IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROCKSON NIMLEY, on behalf of :      CIVIL ACTION
himself and all others        :
similarly situated            :
                              :
            v.                :
                              :
PTT PHONE CARDS INC.          :
d/b/a STAR PINLESS            :      NO. 13-2216

MEMORANDUM

McLaughlin, J.                              April 14, 2014


        This class action complaint arises from the

plaintiff's purchase of the defendant's prepaid international

calling product, Star Pinless.  Generally, the plaintiff alleges

that the defendant's prepaid calling product did not provide the

minutes advertised and paid for by consumers.  The plaintiff,

Rockson Nimley, individually and on behalf of all others

similarly situated, asserts a claim arising under the New Jersey

Consumer Fraud Act ("NJCFA"), as well as claims for breach of

implied-in-fact contract and unjust enrichment.  The Court

considers here a combined motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) and motion to strike class

allegations pursuant to Rule 12(f).  For the reasons that

follow, the Court will grant the defendant's motion to dismiss

for failure to state a claim.  The Court will dismiss the

plaintiff's claims for unjust enrichment and breach of implied-

in-fact contract with prejudice and dismiss the plaintiff's claim under the NJCFA without prejudice.[1]

I.   Background[2]

   A.   Factual Background

The plaintiff, Rockson Nimley, is a citizen of Liberia and is a permanent resident of the United States, residing in Morrisville, Pennsylvania.  The defendant, PTT Phone Cards Inc. ("PTT"), is a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania.  Compl. ¶¶ 1-2.

Prepaid calling cards are used to exchange consumers' money for telephone calling time.  Consumers pay the price stated on the card to purchase calling time, such as for long-distance calls.  Prepaid calling cards are sold at locations such as newsstands, retail stores, grocery stores, and convenience stores, as well as through a vendor's website.  Id. ¶¶ 5, 8.

Typically, consumers purchasing a prepaid calling card receive a card with a toll-free number and an authorization or

_____

[1] The Court dismisses as moot the defendant's motion to strike class allegations.

[2] The Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party, while disregarding any legal conclusions.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

PIN code printed on it.  In some cases, the consumer purchases just the PIN code along with certain access information, rather than a physical card.  Consumers then dial the access number to reach a switch operated by the card issuer and punch in their authorization code.  A recorded message tells the consumer the value remaining on the card before the consumer dials the number they wish to call.  As calls are made, the usable minutes are automatically deducted from the card balance.  Cards often have an expiration date, after which they are invalid.  Id. ¶¶ 6-7.

PTT, under its trade name Star Pinless, offers a variation of prepaid calling card service that omits the physical card.  With Star Pinless, a customer pays a stated amount to the retailer or directly to Star Pinless at its website.  The rates for calling different countries vary, and example rates are generally provided on sales materials posted by the retailer.  A full set of rates is allegedly available on PTT's website.  Nimley alleges that, according to the Star Pinless website, PTT pays a 20% commission to vendors on all Star Pinless international long-distance calling time, such that 80% of the amount paid by the customer is remitted to PTT.  Id. ¶¶ 10-11.

Nimley alleges that PTT did not provide the full calling time that he purchased.  Nimley purchased calling time

3

from Star Pinless "on several occasions" at the New Jersey African-American Market in Trenton, New Jersey.  Nimley lists several dates and times on which he made calls to friends and family in Liberia using the Star Pinless service, and the amount of time he received.  Nimley alleges that he received between one-third and half of the calling time he "should have received."  Nimley alleges that, had he known that he was not going to receive the calling time that he paid for "in accordance with [PTT's][3] representations relating to the time he should have reasonably received," he would not have purchased the Star Pinless product.  Id. ¶¶ 17-20.

Nimley alleges that, due to the computerized switching and accounting used by Star Pinless, and because he was "short-changed" each time he purchased calling time, all other Star Pinless customers are being short-changed in a similar manner because PTT has programmed its switching and account equipment to provide less calling time than was purchased.  Id. ¶ 22.

Nimley asserts, first, a breach of implied-in-fact contract claim on behalf of himself and the class.  Nimley

---

[3] The plaintiff repeatedly uses the acronyms "STT" and "STI" throughout the complaint, instead of "PTT," requiring the Court to make this substitution.  "STI" likely refers to STi Prepaid LLC or STi Phonecard, Inc., another prepaid calling card company.  See Ramirez v. STi Prepaid LLC, 644 F. Supp. 2d 496, 498-99 (D.N.J. 2009).

alleges that by purchasing the Star Pinless calling time and using it in accordance with the website instructions and prompts received when using the access numbers, he and the other class members implicitly accepted PTT's offer to sell calling time in accordance with the rates set forth on the Star Pinless website. Nimley also asserts an unjust enrichment claim, whereby PTT retained revenues derived from purchase of calling time by him and the class after misrepresenting the calling time that he and the class would receive.  Lastly, Nimley asserts a claim based on violations of the NJCFA, N.J. Stat. Ann. § 56:8-1 et seq., on behalf of himself and the members of one of his alternate class definitions.  Nimley alleges that PTT represented that a customer would receive his or her calling time based on the rates set forth on the Star Pinless website, although customers received far less time.  PTT allegedly knew or should have known that those representations and advertisements were false and misleading.  Id. ¶¶ 33, 39, 46-47.


    B.   Procedural History

        Nimley filed his complaint on April 25, 2013.  Nimley asserts that federal jurisdiction is proper pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), which provides that this Court has original jurisdiction over a class

action if the class has more than 100 members, the parties are minimally diverse,[4] and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5)(B); Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013). PTT filed a motion to dismiss and to strike class allegations on July 15, 2013. Briefing on that motion is now complete.

II.   Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45 (1957), abrogated in other respects by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim may be dismissed

---

[4] Minimal diversity exists when:

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2). Because Nimley is a citizen of Liberia and PTT is a citizen of Pennsylvania, minimal diversity exists here.

under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."[5]

Although Rule 8 requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47).  Similarly, naked assertions devoid of further factual enhancement will not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 557).

Although "conclusory" or "bare-bones" allegations will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

---

[5] Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court accordingly disregards the declaration by Mr. Ayub Amir attached to the defendant's motion (Docket No. 9-2).

The Court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  _Fowler_, 578 F.3d at 210.  Any facts pleaded must be taken as true, and any legal conclusions asserted may be disregarded.  _Id._ at 210–11.  Second, the Court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  _Id._ at 211 (quoting _Iqbal_, 556 U.S. at 679).

This two-part analysis is "context-specific" and requires the Court to draw on "its judicial experience and common sense" to determine if the facts pleaded in the complaint have "nudged [the plaintiff's] claims" from "conceivable to plausible."  _Iqbal_, 556 U.S. at 679–80.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  _Id._ at 678.

The Third Circuit has summarized the post-_Twombly_ standard as follows:  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls

8

for enough facts to raise a reasonable expectation that
discovery will reveal evidence of' the necessary element."
<u>Phillips</u>, 515 F.3d at 234 (citations omitted) (quoting <u>Twombly</u>,
550 U.S. at 556).


III. <u>Discussion</u>

        Nimley brings three claims in his class action
complaint, all on behalf of himself and the class:  (1) breach
of implied-in-fact contract; (2) unjust enrichment; and (3) for
violation of the NJCFA.[6]  The defendant moves to dismiss all
claims and strike the class allegations.  The Court will dismiss
the unjust enrichment and breach of implied-in-fact contract
claims with prejudice.  The Court will dismiss the NJCFA claim
without prejudice.


    A.    <u>NJCFA Claim</u>

        The plaintiff fails to state a claim for a violation
of the NJCFA by PTT because Nimley has not adequately alleged
PTT's unlawful conduct or practices, or a causal connection
between that conduct and his loss.  The NJCFA is aimed at
unlawful sales and advertising practices designed to induce

_____

        [6] The third claim is only brought on behalf of "Alternate
Class B," rather than behalf of the entire class.  Compl. at 12.

consumers to purchase merchandise or real estate.  The NJCFA
permits a person, who suffers a loss due to a method, act, or
practice declared unlawful under the act, to sue and recover
treble damages.  N.J. Stat. Ann. § 56:8-19; see also Daaleman v.
Elizabethtown Gas Co., 390 A.2d 566, 568 (N.J. 1978).

        To state a claim under the NJCFA, a plaintiff must
allege:  (1) unlawful conduct by the defendant; (2) an
ascertainable loss on the part of the plaintiff; and (3) a
causal relationship between the defendant's unlawful conduct and
the plaintiff's ascertainable loss.  Crozer v. Johnson & Johnson
Consumer Co., 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (citing
Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007)).  A
claim under the NJCFA must meet the pleading requirements of
Federal Rule of Civil Procedure 9(b).  See Fed. Deposit Ins.
Corp. v. Bathgate, 27 F.3d 850, 876-77 (3d Cir. 1994); Naporano
Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 510
(D.N.J. 2000).

        Rule 9(b) requires that a party alleging fraud "state
with particularity the circumstances constituting fraud."  Fed.
R. Civ. P. 9(b).  In meeting the particularity requirements of
Rule 9(b), a plaintiff must plead "the 'circumstances' of the
alleged fraud in order to place the defendants on notice of the
precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). In addition, a plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation." Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). However, a plaintiff "need not . . . plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (quoting Seville Indus. Machinery, 742 F.2d at 791).

A plaintiff must allege "unlawful conduct by the defendant" to state its NJCFA claim, which is defined as including unconscionable commercial practice, deception, fraud, false promise, false pretense misrepresentation, or knowing concealment. N.J. Stat. Ann. § 56:8-2. Unlawful practices generally fall into three categories: (1) affirmative acts; (2) knowing omissions; and (3) regulation violations. Frederico, 507 F.3d at 202.

When the alleged consumer fraud violation consists of an affirmative act, it is not necessary for the plaintiff to prove that the defendant intended to commit an unlawful act.

11

Slim CD, Inc. v. Heartland Payment Sys., Inc, No. 06-2256, 2007 WL 2459349, at *11 (D.N.J. Aug. 24, 2007).  An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Mango v. Pierce-Coombs, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004). When the alleged consumer fraud consists of an omission, however, intent is an essential element.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997).

Failure to supply any details as to the relevant marketing or advertising materials is insufficient to sustain an NJCFA claim.  See Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 WL 4513924, at *8 (D.N.J. Sept. 30, 2008) ("Cooper asserts that he relied on unspecified marketing and advertising materials related to the . . . television he bought.  He does not, however, supply any details with respect to the marketing or advertising materials in question, characterizing instead their presumed effect upon a 'reasonable consumer.' . . . [That pleading] fails to provide the particularity required by Rule 9(b)." (citations omitted)), aff'd, 374 F. App'x 250 (3d Cir. 2010).

As for the third element, to properly plead a causal nexus, a plaintiff cannot rely on legal conclusions that fail to

allege when statements were made or when the plaintiff was exposed to the statements.  See Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008); see also Gray v. Bayer Corp., No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) ("Other than specifically alleging the purchase of the [product] . . . , she does not specify what misrepresentations she relied upon or when and how she was exposed to those misrepresentations.  In short, Plaintiff fails to specify how the alleged misrepresentations made by Bayer caused her some ascertainable loss." (footnote omitted) (citations omitted)); Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008) ("With regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements.  Without this information, Plaintiffs have not properly plead a 'causal nexus' with the particularity required by Rule 9(b)." (footnotes omitted)).

        The Court finds no specific factual allegations, such as the what, where, and when of the defendant's alleged misrepresentations, that are necessary to sustain a cause of action under the NJCFA.  Neither does Nimley adequately assert

13

when and under what circumstances he was exposed to the alleged misrepresentations.  Nimley's complaint alleges, without specificity, that "Plaintiff purchased Star Pinless Calling time at the New Jersey African-American Market in Trenton, New Jersey on several occasions."  Compl. ¶ 18.  "Plaintiff made calls to friends and family located in Liberia on the dates and times, and received the calling time, set forth below."  Id. ¶ 19. Nimley includes a detailed chart with the date, time called, number called, amount paid, time published, call time received, and time lost.  Id.  He then states, "Had Plaintiff known he would have not received the calling time that he paid for in accordance with [PTT's] representations relating to the time he should have reasonably received, he would not have purchased Star Pinless international long distance calling time."  Id. ¶ 20.

        The complaint also discusses how the rates for calling to different countries are allegedly posted on Star Pinless's website.  Id. ¶¶ 12-14.  Finally, Nimley alleges that PTT violates the NJCFA by representing that "when a customer purchases Star Pinless international long-distance calling time, he or she would receive the calling time based upon the rates set forth on the Star Pinless website when, in fact, the

customer would actually receive significantly less calling time." Id. ¶ 46.

Nimley does not allege that he saw any representations as to per-minute rates to Liberia before or during his purchase. Nimley does not allege that he saw a certain rate on PTT's website before his purchases. Nimley instead discusses PTT's "point-of-sale literature" generally, but never alleges what "literature" he saw before or during his purchases, or what rate, if any, this literature lists for calls to Liberia. Not even in his detailed chart does Nimley list the allegedly misrepresented rate that led to his alleged deprivation of calling time. Nimley has failed to allege the misrepresentations made by PTT, and the circumstances under which he was exposed to those misrepresentations.

Therefore, the plaintiff has failed to state a claim under the NJCFA against PTT.

B.   <u>Unjust Enrichment Claim</u>[7]

Nimley fails to state a claim that PTT has been unjustly enriched because Nimley has not sufficiently alleged that he has conferred a benefit on PTT or that Nimley expected remuneration from PTT.

In order to establish a claim for unjust enrichment under New Jersey law, a plaintiff must show that the defendant received a benefit and that retention of that benefit without payment would be unjust.  <u>Stewart v. Beam Global Spirits & Wine, Inc.</u>, 877 F. Supp. 2d 192, 196 (D.N.J. 2012).  An unjust enrichment claim consists of three elements: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it.  <u>Mason v. Coca-Cola Co.</u>, No. 09-0220, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010)

---

[7] Nimley's complaint fails to identify under which state's law this unjust enrichment claim is asserted, given that this claim is brought on behalf of the plaintiff and the class.  That alone is reason to dismiss his claim.  <u>See</u> <u>In re Wellbutrin XL Antitrust Litig.</u>, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("The plaintiffs fail to link their [unjust enrichment] claim to the law of any particular state.  As a result of this deficiency, the plaintiffs fail to state a cause of action under their third [unjust enrichment] count.").  Because both parties address this claim under New Jersey law, at least with regard to Nimley himself, the Court will do the same with regard to Nimley's individual claim.  The Court notes, however, that PTT does not necessarily agree that New Jersey law is the most appropriate law to apply to the class as a whole.  Def.'s Reply Br. at 6 n.1.

(citing In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).  The doctrine further requires a plaintiff to show that it "expected remuneration from defendant at the time it performed or conferred a benefit on defendant."  Id. at *8.

However, New Jersey law does not recognize unjust enrichment as an independent tort cause of action.  Thus, where a plaintiff asserts an unjust enrichment cause of action along with other tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed.  Id. (quoting Torres-Hernandez, 2008 WL 5381227, at *8-9).

Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that "the plaintiff allege a sufficiently direct relationship with the defendant to support the claim."  Nelson v. Xacta 3000 Inc., No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009); see also Cooper, 2008 WL 4513924, at *10.  When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer.  See Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 711-12 (D.N.J. 2011); In Re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II), No. 03-4558, 2010 WL 2813788, at *33 (D.N.J. July 9, 2010); Alin v. Am. Honda

17

Motor Co., No. 08-4825, 2010 WL 1372308, at *14-15 (D.N.J. Mar. 31, 2010); Nelson, 2009 WL 4119176, at *7.

Here, Nimley alleges that he and the class members "conferred a benefit on [PTT] by purchasing Star Pinless international long-distance calling time." Compl. ¶ 38. Furthermore, "[PTT] has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Star Pinless international long-distance calling time, which retention under these circumstances is unjust and inequitable because [PTT] misrepresented the calling time Plaintiffs and other Class Members would receive when they purchased Star Pinless international long-distance calling time." Id. ¶ 39. Nimley states that he purchased Star Pinless calling time "at the New Jersey African-American Market in Trenton, New Jersey" on several occasions. Id. ¶ 18. Nimley does not allege any relationship between the market and PTT, or that the market gave or was required to give its profits from the purchase of the calling time to PTT. Nimley has failed to adequately allege a direct relationship between the parties sufficient to state a claim for unjust enrichment.

Therefore, the plaintiff has failed to state a claim for unjust enrichment against PTT.

C.   <u>Implied-in-Fact Contract Claim</u>[8]

Nimley fails to state a claim that PTT breached an implied-in-fact contract because Nimley failed to allege the terms of any contract between him and PTT.  The distinction between express and implied contracts rests on alternative methods of contract formation.  Contracts are "express" when the parties state their terms and "implied" when the parties do not state their terms.  The distinction is based not on the contracts' legal effect but on the way the parties manifest their mutual assent.  <u>See</u> <u>In re Penn. Cent. Transp. Co.</u>, 831 F.2d 1221, 1228 (3d Cir. 1987) ("An implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed.  The agreement is inferred from the conduct of the parties.").  In other words, the terms "express" and "implied" do not denote different kinds of contracts, but rather reference the evidence by which the parties demonstrate their agreement.  <u>See</u> <u>St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.</u>, 158 A.2d 825, 828 (N.J. 1960).

---

[8] Nimley's complaint fails to identify under which state's law this implied-in-fact contract claim is asserted, given that this claim is brought on behalf of the plaintiff and the class. Again, because both parties address this claim under New Jersey law, at least with regard to Nimley himself, the Court will do the same with regard to Nimley's individual claim.

The party alleging an implied-in-fact contract must
show the same elements required in an express contract:  offer,
acceptance, and consideration.  Gardiner v. V.I. Water & Power
Auth., 145 F.3d 635, 644 (3d Cir. 1998).  Under New Jersey law,
a contract arises from offer and acceptance, and must be
sufficiently definite so that the performance to be rendered by
each party can be ascertained with reasonable certainty.  Baer
v. Chase, 392 F.3d 609, 618-19 (3d Cir. 2004) (citing Weichert
Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992)).  Parties
create an enforceable contract when they agree on its essential
terms and manifest an intent that the terms bind them.  If
parties to an agreement do not agree on one or more essential
terms of the purported agreement, courts generally hold it to be
unenforceable.  A contract is unenforceable for vagueness when
its essential terms are too indefinite to allow a court to
determine with reasonable certainty what each party has promised
to do.  Id. at 619.

Nimley asserts that an implied-in-fact contract was
established in the following allegation:  "[b]y purchasing Star
Pinless international long-distance calling time from the vendor
and using that Star Pinless international long-distance calling
time in accordance with the instructions on [PTT]'s website and
prompts received when calling local access numbers, Plaintiff

20

and other Class Members implicitly accepted [PTT]'s offer to sell Star Pinless international long-distance calling time in accordance with the rates set forth on the Star Pinless website." Compl. ¶ 33.

Nimley asserts that PTT made an offer through vendors, "based upon the representation that anyone purchasing Star Pinless . . . time would receive the full calling time" as stated on PTT's website and in PTT's promotional materials. Id. ¶ 31. Acceptance allegedly occurred when Nimley and the other class members purchased the calling time from a vendor and called the local access numbers. Id. ¶ 32. As a result, "a contract was formed . . . that [PTT] would provide the full amount of calling time." Id. ¶ 34.

Importantly, Nimley does not allege that he purchased the calling time directly from PTT. Rather, he purchased calling time from a store in Trenton, New Jersey. Nimley cites no law in support of its novel theory that a contract arises between a customer and a manufacturer when the manufacturer's product is sold to the customer through a retailer. The Court can find no law supporting this theory, either.

For example, in Risner v. Regal Marine Indus., No. 11-00191, 2014 WL 1270986 (S.D. Ohio Mar. 27, 2014), applying Ohio law, the court concluded:

21

> [P]laintiff was not a party to a contract with Regal,
> the manufacturer of the 2010 boat, but instead he
> purchased the boat from LNS, an authorized Regal
> dealer.  The fact that LNS was an authorized Regal
> dealer is insufficient to establish privity between
> plaintiff and Regal because "vertical privity exists
> only between immediate links in the distribution
> chain."  As a general rule, "[o]ne who received goods
> from another for resale to a third person is not
> thereby the other's agent in the transaction."

Id. at *30 (citations omitted) (quoting Buckeye Res., Inc. v.
DuraTech Indus. Int'l, Inc., No. 11-335, 2011 WL 5190787, at *4
(S.D. Ohio Oct. 31, 2011)); see also Haag v. Hyundai Motor Am.,
No. 12-6521L, 2013 WL 4812344, at *2-3 (W.D.N.Y. Sept. 10, 2013)
(dismissing breach of implied warranty and breach of contract
claims for failure to allege sufficient privity with the
defendant, because plaintiff's vehicle was not purchased from
the defendant, but from an independent dealer); Fireman's Fund
McGee Marine Underwriters a/s/o Hartung Bros., Inc. v. A & B
Welding & Mfg., Inc., No. 04-0576, 2005 WL 568055, at *6 (W.D.
Wis. Mar. 8, 2005) (dismissing breach of contract and breach of
implied warranty claims because Wisconsin law of warranty did
not allow a non-privity buyer to recover from a remote seller
within the distribution chain).

The plaintiff's allegations regarding his implied-in-
fact contract theory are merely legal conclusions couched as
factual allegations, and such conclusions cannot support a cause
of action.  The plaintiff's allegations do not illustrate that

there was an offer and acceptance of that offer between Nimley and PTT, especially given that Nimley does not state any terms of this alleged agreement, such as the rates that Nimley saw and believed he would receive when using his calling time. "[I]n light of the allegations that Plaintiff is an ultimate consumer and [PTT] is a manufacturer, the Court finds it implausible that Plaintiff entered into a contract with Defendant[]." Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331, 1341 (S.D. Fl. 2011).

Therefore, the plaintiff has failed to state a claim for breach of implied-in-fact contract against PTT.

D.   Dismissal of Class Allegations

The Court will dismiss the class allegations as moot. When claims of the named plaintiff become moot before class certification, dismissal of the action is required. See Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992). In such a situation, "there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution." Id. at 974-75 (quoting Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1041 (5th Cir. 1981)).

E.   Motion to Strike Class Allegations

The defendant has moved to strike the plaintiff's class allegations, with prejudice, under either Federal Rule of Civil Procedure 12(b)(6) or 12(f).  Because the Court dismisses this case in its entirety, as a result of the representative plaintiff failing to state a claim on any of his three claims, the Court will deny this motion as moot.

F.   Leave to Amend

The Third Circuit has held that if a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment, unless an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  Dismissal without leave to amend is justified on the grounds of bad faith, undue delay, prejudice, or futility.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  The Court declines to allow Nimley to amend his unjust enrichment or

24

breach of implied-in-fact contract claims on this ground.  The
Court will allow Nimley thirty days to file an amended complaint
with regard to the NJCFA claim.

An appropriate Order shall issue.